RECEIVED
SEP - 6 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| CHERYL E. HAYES | * | CIVIL ACTION NO. 04-2280 |
| VERSUS | * | MAGISTRATE JUDGE HILL |
| COMMISSIONER OF SOCIAL SECURITY | * | BY CONSENT OF THE PARTIES |

### REASONS FOR JUDGMENT

The undersigned was referred this social security appeal by consent of the parties. For the reasons set forth below, the Commissioner's decision is **REVERSED,** and claimant is awarded benefits commencing August 9, 2001.

### I. Background

The claimant, Cheryl E. Hayes ("Hayes"), age 44, filed a claim for supplemental security income payments on August 9, 2001, on the basis that she was disabled due to problems with her back, nerves and depression. She had a ninth-grade education, and no vocationally relevant past work experience.

The record reflects that claimant was admitted to the Crowley Mental Health Center on July 19, 2001, with symptoms of depressed mood, sleeplessness, impaired concentration, anxiety, auditory and visual hallucinations, paranoid delusions, and recurring death wishes. She reported that she had received sporadic treatment since

the 1980s, mainly while incarcerated in the parish jail on fighting charges. Dr. Joe Ben Holden diagnosed her with bipolar disorder, mixed, with psychotic symptoms, and borderline intellectual functioning. He recommended chemotherapy and individual counseling.

Hayes was receiving treatment monthly, and taking Depakote, Zyprexa, and Effexor. She had reported some improvement in her symptoms since beginning treatment, but her mood had remained low and anxious due to numerous stressors. She also had continued to experience occasional hallucinations, and remained slightly paranoid and suspicious.

On February 28, 2002, Dr. Mark H. Dawson performed a consultative physical examination. At that time, Hayes complained of back pain and some knee pain at times. On examination, she could bend, but missed her toes by two inches. The straight leg raising test was negative. Reflexes, motor strength, and joint range of motion were normal. Dr. Dawson's assessment was a normal examination. He saw no evidence of depression, mental disorder, or abnormalities of the musculoskeletal system.

Dr. Alfred Buxton performed a consultative psychological examination on March 7, 2002. Hayes related that her mental health or nerves were "bad." Her sleep and appetite were good, but energy and libido were poor. She was able to

occasionally cook and clean, shop, manage money, communicate, manage time independently, and do independent local travel.

On examination, Hayes' verbal receptive and expressive language skills and dress and groom were good. Social skill was fairly good. Recent and remote memories were intact. Ability to attend and concentrate was good. Pace was even. Intellect was subaverage. Judgment and reflective cognition were good. Reasoning was fair, and insight was poor. Cognitions were clear and cogent.

Mood was even. Hayes reported hearing voices, but that the hallucinations were reduced with medication. She had generalized paranoid ideation, episodic passive suicidal ideation, and occasional assaultive ideation. Her self-image was poor, but goal orientation was positive. She was easily upset and had frequent crying spells. She was alert, responsive, and oriented in all four spheres.

Dr. Buxton's impression was schizoaffective disorder, depressed type, with degree of impairment moderately severe and prognosis guarded, and chronic pain, with degree of impairment mild and prognosis guarded. Hayes' Global Assessment of Functioning ("G.A.F.") score was 55 over the last 8 months and 45 for 4 months prior. He noted that continued outpatient mental health intervention would be appropriate, and that such treatment would be expected to be long-term. He opined that "should she demonstrate significant improvement in her emotive functional

status, as demonstrated through feedback from treating professionals and interventionists, then a referral to Louisiana Rehabilitation Service for assessment, training, and job placement would be appropriate. Any such referral prior to her achieving such significant positive improvement would be premature." (Tr. 125).

In the Mental Residual Functional Capacity Assessment ("RFC") dated May 7, 2002, Dr. Sandip Sen noted that claimant continued to have "significant psychiatric symptoms that results in moderate to marked limitations in multiple areas of functioning." (Tr. 128). Dr. Sen found that she was markedly limited as to ability to maintain attention and concentration for extended periods and the ability to complete a normal workday and workweek without interruptions. She was moderately limited in most other areas.

In the Psychiatric Review Technique ("PRT"), Dr. Sen assessed Hayes for schizoaffective disorder, depressed type. He found that she had a mild restriction as to activities of daily living, but moderate restrictions as to difficulties in maintaining social functioning and maintaining concentration, persistence and pace. He found that she had one or two episodes of decompensation, each of extended duration. Dr. Sen concluded that while claimant's condition had improved with treatment, she "still has significant impairment that would prevent competitive employment at this time." (Tr. 143).

4

Dr. Paul Stringfellow treated Hayes for complaints of shoulder, back, sacroiliac joint, and knee pain. A bone scan taken on January 3, 2002, and an MRI dated November 12, 2002 were consistent with osteoporosis with no evidence of focal disc herniation or spinal stenosis. His assessment was low back pain and osteoporosis, for which he prescribed Darvocet and a Medrol Dose Pak.

On March 1, 2004, Dr. Sandra B. Durdin performed a consultative psychological evaluation. At that time, Hayes complained of mental and physical problems, including back pain. On examination, she was alert and fully oriented. She had a normal pace, and had sustained attention and concentration. She had a moderately depressed mood. She had good immediate recall and was a fair historian. She had fair ability to complete similarities, and intact judgment. She had no suicidal ideation, vaguely spoke of voices directing her daily activities, and did not display any paranoid ideation. At that time, she was not taking any medication for mental symptoms.

Dr. Durdin's impression was a recurrent depression without convincing evidence of psychosis at that time. She noted that Hayes had a long history of alcohol and drug abuse, but did not provide dates concerning her last usage. Her diagnostic impression was depressive disorder, NOS moderate; polysubstance dependence, allegedly in remission; borderline intellectual functioning, upper limit to low average

by estimation; personality diagnosis, NOS, Cluster B, and back and leg pain, recent rib fractures from a fall, and a history of breast lumps by report.

Dr. Durdin opined that Hayes was capable of understanding, recalling, and carrying out simple repetitive instructions, but not detailed or complex instructions. She determined that claimant could sustain attention for two hour blocks of time. She had fair to poor social and coping skills. Dr. Durdin noted that claimant's compliance with treatment was erratic, and that she had concerns about claimant's substance usage.

In the Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Durdin found that Hayes had marked limitations as to her ability to understand, remember, and carry out detailed instructions. She also determined that claimant had moderate to marked restriction as to her ability to respond appropriately to work pressures in a usual work setting. She noted that claimant was moderately limited as to her ability to interact appropriately with the public, supervisors, and co-workers, as well as to respond appropriately to changes in a routine work setting.

At the hearing on September 3, 2003, Hayes reported that she had last worked in 1980. She complained of hearing voices and memory problems. She said that she was seeing a doctor monthly.

Claimant confirmed that she was taking Depakote, Zyprexa, Zoloft, and pain medication. She reported that the medication was helpful sometimes. She stated that she was unable to work because she was afraid.

At a supplemental hearing on June 18, 2004, the ALJ posed a hypothetical to the vocational expert ("VE"), William Stampley, in which he asked the VE to assume a younger individual with limitation education and no past relevant work, an unlimited residual functional capacity exertionally, and the following mental limitations: marked limitations in the ability to understand, remember, and carry out detailed instructions, moderate limitations in the ability to interact with the public, supervisors, and coworkers, and moderate limitations in the ability to respond to changes in a routine work setting. In response, Mr. Stampley stated that claimant could perform the jobs of hand packager, of which there were 1,155 positions statewide and 130,811 nationally; kitchen helper, of which there were 5,394 positions statewide and 429,627 nationally; cannery worker, of which there were 98 positions statewide and 19,999 nationally; hand washer, of which there were 10,507 positions statewide and 710,886 nationally, and housekeeping cleaner, of which there were 4,696 positions statewide and 366,408 nationally.

The claimant's attorney then modified the hypothetical to include the limitation that such claimant could only sustain attention for two-hour blocks of time. In

response, Mr. Stampley stated that he would eliminate any job with that addition.

**Law and Opinion**

On appeal, Hayes argues that the ALJ erred: (1) in assessing the claimant's vocational abilities, particularly in posing a hypothetical question to the vocational expert which was not based on the medical evidence: (2) in ignoring the response of the vocational expert to the hypothetical expert posed by Hayes' attorney, which was based on the medical evidence, and (3) in failing to explain his disregard of the medical evidence substantiating claimant's schizoaffective disorder and bipolar disorder under the listing at 12.04. Because I find that the ALJ erred in finding that claimant had the ability to maintain employment, I order that the Commissioner's decision is **REVERSED** and that the claimant is awarded benefits.

In evaluating the medical evidence, the ALJ considered Dr. Buxton's opinion recommending vocational rehabilitation "if her symptoms improved." (Tr. 17). However, what Dr. Buxton actually found was that claimant should not be referred for assessment, training and job placement **unless and until** "she demonstrate[s] *significant improvement* in her emotive functional status, as demonstrated through feedback from treating professionals and interventionists." (emphasis added). (Tr. 125). He further stated that "[a]ny such referral prior to her achieving such *significant positive improvement* would be premature." (emphasis added). While the most

recent records from Crowley Mental Health Center indicate that claimant is showing improvement, they indicate that she is still having symptoms for which she is undergoing treatment. (Tr. 189-93). The evidence does not support a finding that claimant has undergone such "significant lasting positive improvement" that she is capable of working on a sustained basis.

Subsequent to Dr. Buxton's examination, the state agency physician, Dr. Sen, performed an RFC assessment in which he found that Hayes was markedly limited as to her ability to maintain attention and concentration for extended periods and the ability to complete a normal workday and workweek without interruptions. (Tr. 126-27). He concluded that she "continues to have significant psychiatric symptoms that results in moderate to marked limitations in multiple areas of functioning." (Tr. 128).

Significantly, in the PRT, Dr. Sen found that she had a mild restriction as to activities of daily living, but moderate restrictions as to difficulties in maintaining social functioning and maintaining concentration, persistence and pace. He determined that she had one or two episodes of decompensation, each of extended duration. Dr. Sen opined that while claimant's condition had improved with treatment, she "still has significant impairment that would prevent competitive employment at this time." (Tr. 143). The ALJ rejected Dr. Sen's opinion on the grounds that its was "inconsistent within itself, and is not supported by the evidence

as a whole." (Tr. 18). However, the Court finds that his findings are consistent with his report, as well as that of Dr. Buxton.

Additionally, the ALJ interpreted Dr. Durdin's finding that Hayes could sustain attention for "two-hour blocks of time" as meaning that claimant "is able to sustain attention and attention for two hours and after a short break can sustain for another two hours, continuing this routine throughout the day." (Tr. 18, 186). Even if the ALJ's interpretation is correct, the ALJ failed to consider Mr. Stampley's testimony that all jobs would be eliminated for a claimant who could only sustain attention for two-hour blocks of time. (Tr. 200). This was error.

The medical reports, as well as Dr. Stampley's testimony, do not indicate that claimant is capable of working on a sustained basis at this time. At the time of Dr. Buxton's evaluation, he determined that "[a]ny such referral [for assessment, training and job placement] prior to her achieving such significant positive improvement would be premature." (Tr. 125). Based on the most recent evidence regarding claimant's mental condition, as well as Dr. Sen's opinion, claimant has not demonstrated such "significant positive improvement."

A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that she can physically perform certain jobs; it also requires a determination that the

claimant can hold whatever job she finds for a significant period of time. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002) (citing *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986)). According to all of the sources who personally evaluated her, claimant would be unable to maintain gainful employment. Thus, the ALJ erred in his determination that claimant retains the capacity for work.

Because the ALJ erred in finding that claimant had the ability to maintain employment, it is ordered that the Commissioner's decision is **REVERSED**, and the claimant is awarded appropriate benefits commencing August 9, 2001.

Signed this __5__ day of __September__, 2005, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE